IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GILBERT J. HINOJOS,

    Plaintiff,

vs.                                                                    Civ. No. 04-0779 MV/RHS

HONEYWELL FM&T,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment, filed March 13, 2006, **[Doc. No. 46]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is well-taken and will be **GRANTED.**

## FACTUAL BACKGROUND

Plaintiff Gilbert J. Hinojos worked for Defendant Honeywell FM& T for many years, starting out as a custodian and working his way up to the position of Materials Control Coordinator. In November 1998 and September 1999, Plaintiff filed EEOC complaints, both of which were resolved in favor of Defendant. In 2000, Plaintiff filed a lawsuit in this court entitled *Hinojos v. Honeywell International, Inc.*, Civ. No. 00-1157 WJ/RLP ("*Hinojos I*") alleging, in part, that Defendant violated Title VII by selecting two other individuals rather than Plaintiff for an open position in retaliation for Plaintiff's filing of the two EEOC complaints. Judgment was entered in favor of Defendant on all claims on April 19, 2002. Plaintiff appealed and the Tenth Circuit affirmed the district court on January 23, 2003.

On July 8, 2002, Plaintiff filed a complaint under the Department of Energy's ("DOE") Contractor Employee Protection Program, 10 C.F.R. Part 708, alleging retaliation based upon the filing of the two EEOC complaints. The Contractor Employee Protection Program prohibits contractors from retaliating against an employee who discloses information that the employee believes reveals a substantial violation of a law, rule, or regulation or reveals gross fraud, waste, or abuse of authority.

On December 6, 2002, while Plaintiff's Part 708 complaint was pending, Plaintiff was involved in a work-related accident. Plaintiff picked up a load of cargo restraint containers ("CRTs") for transport.[1] The forklift operator who loaded the CRTs on the truck being driven by Plaintiff handed Plaintiff a tie-down strap and instructed him to secure the CRT load. Plaintiff, despite being previously trained on the proper securing of loads for transport, did not secure the CRT load. While transporting the load of CRTs, Plaintiff had to stop suddenly for a traffic light and several of the CRTs shifted forward. One CRT penetrated the rear glass of his vehicle and another landed on top of the roof of the vehicle. After the accident, Defendant convened a separation committee to evaluate Plaintiff and the accident. The separation committee determined that Plaintiff should be terminated due to the severity of the accident, his failure to take preventative measures, his attitude toward the accident, and his involvement in a prior safety incident. Plaintiff was terminated on January 8, 2003.

Following his termination, Plaintiff amended his Part 708 complaint to add a claim that his termination was in retaliation for filing the Part 708 complaint. Plaintiff's initial retaliation claims were dismissed by the DOE Hearing Officer because claims alleging retaliatory action taken as a

---

[1] A CRT is a large aluminum container that weighs several hundred pounds.

result of an employee filing an EEOC complaint are barred by 10 C.F.R. Part 708.4. The Hearing Officer concluded, however, that Plaintiff's claim that his termination was in retaliation for filing a Part 708 claim was not barred because "protected activity" for purposes of Part 708 included participating in a Part 708 proceeding.

The Hearing Officer conducted a hearing on Plaintiff's Part 708 complaint on July 14-15, 2005. Following the hearing, the Hearing Officer issued a written decision concluding that Defendant had established by clear and convincing evidence that it would have terminated Plaintiff as a result of the accident even in the absence of the Part 708 complaint. Plaintiff appealed the Hearing Officer's decision, which was affirmed by the Director of the Office of Hearings and Appeals. Plaintiff filed a second appeal seeking review by the Secretary of Energy but later abandoned this appeal.

On July 12, 2004, Plaintiff, proceeding *pro se,* filed this action asserting claims of retaliation, discrimination, and breach of contract. Defendant filed a motion to dismiss, contending that Plaintiff's complaint contained the same claims that Plaintiff had litigated in *Hinojos I* and, therefore, Plaintiff's claims were barred by the doctrine of *res judicata*. The Court agreed that many of Plaintiff's claims were barred by the doctrine of *res judicata* and ordered Plaintiff, who had obtained legal counsel, to file an amended complaint alleging only claims based on acts that occurred after the filing of the *Hinojos I* complaint and instructed Plaintiff not to seek to relitigate either the claims asserted or the ultimate issues of law and fact decided in *Hinojos I*.

On July 1, 2005, Plaintiff filed an amended complaint alleging that he was terminated in retaliation for filing his previous EEOC complaints and lawsuit against Defendant. The amended complaint contains three counts: 1) a Title VII claim that Plaintiff's termination was in retaliation

3

for filing his previous EEOC charges and lawsuit; 2) a Title VII claim that Plaintiff's termination was discriminatory based upon national origin; and 3) a state law claim that Plaintiff's termination was in violation of public policy because it was based upon his previous EEOC charges and lawsuit. Defendant now seeks summary judgment on the grounds that Plaintiff is collaterally estopped from relitigating the basis of his termination because the Hearing Office determined that Plaintiff's termination was based upon the December 6, 2002 accident, and, as such, Plaintiff cannot establish pretext. In the alternative, Defendant seeks summary judgment on the grounds that Plaintiff has failed to come forward with evidence establishing pretext.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). There is no requirement that the moving party negate the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the

nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted). Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248. Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus*, 985 F. Supp at 1281.

## DISCUSSION

### I. Collateral Estoppel

Defendant devotes the majority of its motion to arguing that Plaintiff is precluded by the law of collateral estoppel from relitigating certain facts decided in the Part 708 proceeding and that these established facts effectively prevent Plaintiff from being able to establish that Defendant's stated reasons for Plaintiff's termination are a pretext for discrimination or retaliation. The Court need not reach Defendant's collateral estoppel argument, however, because Plaintiff has not come forward with sufficient evidence to establish a *prima facie* case of either disparate treatment or retaliation.

### II. Disparate Treatment Claim

5

Plaintiff contends that his termination was discriminatory based upon national origin in violation of Title VII. Disparate treatment claims that are supported by indirect evidence of discrimination are examined under the familiar burden-shifting analysis first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Under the burden-shifting method, the plaintiff first has the burden of establishing a *prima facie* case of disparate treatment. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff succeeds in showing such a *prima facie* case, a presumption of illegal discrimination is created and the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged act. *Id.* If the defendant meets its burden by producing a "clear and reasonably specific" explanation for the conduct, *Burdine*, 450 U.S. at 258, the plaintiff may show that the reasons offered by the defendant were merely a "pretext" for discrimination, *McDonnell Douglas*, 411 U.S. at 804. Throughout the process of applying the *McDonnell Douglas* test, courts must remain flexible because the test "was never intended to be rigid, mechanized, or ritualistic." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978).

### A. *Prima Facie* Case of Disparate Treatment

To establish a *prima facie* case of disparate treatment, a plaintiff must show that 1) he belongs to a protected class; 2) he suffered an adverse employment action; and 3) the defendant treated similarly situated employees differently. *See Trujillo v. University of Colo. Health Science Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998). There is no dispute that Plaintiff, as a Mexican American, belongs to a protected class and that Plaintiff, by being terminated, suffered an adverse employment action. *See Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 761

(1998) (an adverse employment action constitutes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"). Plaintiff's *prima facie* case falters, however, on the third prong.

"To assert a claim of disparate treatment, the plaintiff must show that he was treated differently than other similarly situated employees who violated work rules of comparable seriousness." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) (citation omitted). "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Id.* (citation omitted). "When comparing the relative treatment of similarly situated minority and non-minority employees, the comparison need not be based on identical violations of identical work rules; the violations need only be of 'comparable seriousness.' " *Elmore v. Capstan, Inc*., 58 F.3d 525, 531 (10th Cir. 1995).

Plaintiff names four other employees that he contends were involved in comparable accidents but were not terminated--Gib Lovell, Janet Hoy, Margo Barkdoll and Jimmy Martinez. First, Plaintiff's statements about these employees are based solely upon hearsay and cannot be considered by the Court in ruling on a summary judgment motion. Federal Rule of Civil Procedure 56(e) mandates that evidence offered in opposition to a motion for summary judgment be "made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). "[G]eneralized, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment." *Stevens v. Barnard*, 512 F.2d 876, 879

7

(10th Cir. 1975).

Second, Defendant has come forward with evidence that none of the employees cited by Plaintiff was similarly situated to Plaintiff and none was involved in a comparable accident. Lovell and Martinez are minorities, thus even if they were similarly situated and involved in comparable accidents, it would not establish that similarly situated non-minority employees were treated in a different manner as necessary to establish a *prima facie* case of disparate treatment.[2] Barkdoll and Hoy never had the same supervisor as Plaintiff and thus were not similarly situated employees. Furthermore, Barkdoll and Hoy's accidents were not comparable to Plaintiff's accident. Barkdoll was involved in a motor vehicle accident in which another vehicle side-swiped her vehicle on the freeway. The other driver was at fault. Hoy was simply a passenger in a vehicle that was involved in an accident.

Plaintiff has failed to come forward with any admissible evidence that he was treated differently than other similarly situated non-minority employees who violated work rules of comparable seriousness as necessary to demonstrate a *prima facie* case of disparate treatment. Plaintiff's failure to establish a *prima facie* case mandates that summary judgment be granted in favor of Defendant on Plaintiff's disparate treatment claim.

## III.   Retaliation Claim

Plaintiff contends that his termination was in retaliation for filing his previous EEOC

---

[2] In addition, Martinez and Lovell were not similarly situated employees. Martinez never had the same supervisor as Plaintiff. While Lovell and Plaintiff had the same supervisor at times, they had different supervisors at the time each was involved in a work-related accident. Furthermore, Martinez and Lovell were not involved in accidents with comparable degrees of fault and potential for serious harm. Martinez backed a trailer into a parked truck at a work site at approximately 1-2 miles per hour while Lovell inadvertently cut through a hidden low-voltage extension cord that another employee had left in an improper location.

8

complaints and lawsuit. Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Retaliation claims based on indirect evidence are also analyzed under the *McDonnell Douglas* burden-shifting framework. *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982)

### A. *Prima Facie* Case of Retaliation

To establish a *prima facie* case of retaliation under Title VII, Plaintiff must show that: (1) he engaged in protected opposition to discrimination; (2) Defendant subjected him to an adverse employment action subsequent to the protected activity; and (3) a causal connection exists between the protected activity and the adverse employment action. *See Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1205 (10th Cir. 2000).

Plaintiff easily meets the first two prongs of the *prima facie* case. Plaintiff engaged in protected activities when he filed his EEOC complaints and prior lawsuit and Plaintiff was terminated from his job. *See Burlington,* 524 U.S. at 761 (an adverse employment action constitutes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"). Plaintiff has failed, however, to demonstrate a causal connection between the protected activity and the adverse employment action.

A causal connection "may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."

9

*Burrus,* 683 F.2d at 343 (citation omitted). "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (citation omitted). Temporal proximity of two to three months between the protected conduct and an adverse employment action may be sufficient to establish a *prima facie* case of retaliation. *See Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir. 2004) (concluding that a period of two to three months between the protected activity and the alleged retaliatory action was sufficient to establish causation); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (assuming that temporal proximity of two months and one week is sufficient to support a *prima facie* case of retaliation).

In this case, Plaintiff filed his EEOC complaints in 1998 and 1999 and his previous lawsuit in 2000. Judgment was entered in *Hinojos I* on April 19, 2002. Plaintiff's termination occurred years after the EEOC complaints were filed and nearly eight months after judgment was entered in *Hinojos I*. Due to the lack of temporal proximity between Plaintiff's protected activity and his termination, Plaintiff must offer additional evidence to establish a causal connection.

The only evidence Plaintiff offers to establish causation is his belief that his prior lawsuit played a direct role in his termination based "on the fact that he received the Tenth Circuit's affirmation of the Court's final decision in that matter when he was in the middle of his 708 Whistle Blower Complaint and that then 'everything just started happening real fast . . . I felt that once--once that decision was made by the judge, then I feel that I was open game for the adverse employment action that happened to me.'" The docket in *Hinojos I* shows that the Tenth Circuit issued its decision affirming the lower court on January 23, 2003, which was after Plaintiff's

10

termination. Thus the issuance of the Tenth Circuit decision cannot provide a causal connection between Plaintiff's termination and his previous complaints and lawsuit.

Plaintiff has failed to demonstrate any causal connection between his protected activity and his termination. As such, Plaintiff has failed to establish a *prima facie* case of retaliation and summary judgment on this claim will be granted in favor of Defendant.

Moreover, assuming *arguendo* that Plaintiff established a *prima facie* case of retaliation, given Defendant's assertion of legitimate, nondiscriminatory reasons for firing Plaintiff--reasons that the Part 708 hearing officer found justified Plaintiff's termination--success of Plaintiff's retaliation claim hinges on his proof of pretext. As evidence of pretext, Plaintiff cites primarily to the hearsay statements he submitted asserting that other employees were involved in accidents but not terminated. As discussed above, not only are these statements inadmissible but none of the cited employees was involved in a comparable accident.

Plaintiff's remaining evidence of pretext is that no police report was filed at the time of the accident; that his supervisors did not treat the accident like a "big deal;" and that the Environmental Health and Safety Officer told Plaintiff that he would not get in trouble for the accident. Plaintiff does not provide any evidence in support of his assertion that policy requires the filing of a police report when a General Services Administration vehicle is involved in an accident much less explain how his failure to file such a report is evidence of pretext. Similarly, the Environmental Health and Safety Officer's alleged statement that Plaintiff would not get in trouble for the accident is insufficient to establish pretext because the role of the Environmental Health and Safety Officer in determining the proper response to an employee accident is unknown. Furthermore, Plaintiff was terminated due to the severity of the accident, his failure to

take preventative measures, his attitude toward the accident and his involvement in a prior safety incident.  There is no evidence that the Environmental Health and Safety Officer was aware of all these factors when he made the alleged comment.  For the same reasons, Plaintiff's opinion that his supervisors did not treat the accident like a "big deal" is insufficient to establish pretext.

In short, Plaintiff has offered no credible evidence that creates a genuine issue of material fact that Defendant's proffered reasons for the employment decision were pretextual--*i.e.* unworthy of belief and his retaliation claim fails on this basis as well.

## IV.  State Law Claim

Plaintiff's remaining claim is a state law claim that Plaintiff's termination was in violation of public policy because it was based upon Plaintiff's previous EEOC charges and lawsuit.  Under 28 U.S.C. § 1367, this Court has discretion to dismiss claims supported only by supplemental jurisdiction after the dismissal of all claims over which it had original jurisdiction.  The Tenth Circuit has stated that a district court has discretion to try state claims in the absence of any triable federal claims.  *See Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).  That discretion, however, is to be exercised only "in those cases in which given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction."  *Id.*  Moreover, "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."  *Id.*

The Court finds no compelling reason to exercise supplemental jurisdiction over Plaintiff's state law claim and, accordingly, will dismiss it without prejudice.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment, filed

March 13, 2006, **[Doc. No. 46]**, is **GRANTED**.  Judgment will be entered in favor of Defendant Honeywell FM&T on Plaintiff's Title VII retaliation claim (Count I) and Plaintiff's Title VII disparate treatment claim (Count II).

**IT IS FURTHER ORDERED** that Plaintiff's state law claim (Count III) is dismissed without prejudice.

Dated this 21st day of September, 2006.

```
                              _____
                              MARTHA VAZQUEZ
                              U. S. DISTRICT COURT JUDGE
```

Attorneys for Plaintiff:
    Gilbert J. Vigil, Esq.

Attorneys for Defendant:
    Jeffrey L. Lowry, Esq.
    Jill Marchant, Esq.
.